In re The GREAT SCOTT FOOD
MARKET, INC. d/b/a Big G
Food Stores, Debtor.

David T. CHASE and Israel M. Resnikoff
d/b/a Chase/Resnikoff, Plaintiffs,

v.

The GREAT SCOTT FOOD MARKET,
INC. d/b/a Big G Food Stores,
Defendant.

Bankruptcy No. BK–76–484.

United States Bankruptcy Court,
D. Rhode Island.

Aug. 7, 1979.

Joel B. Rosenthal, Boston, Mass., for debtor.

Ira L. Schrieber, Providence, for Chase/Resnikoff, plaintiffs.

## MEMORANDUM OPINION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

The Great Scott Food Market (Big G) chain of supermarkets, Debtor in this Chapter XI proceeding, continues to operate profitably and has presented a plan which has been accepted by the general creditors. One of the largest income producing stores in the chain, the Putnam Connecticut Big G store is involved in a dispute with Chase-Resnikoff (Resnikoff), owner and lessor of the Putnam Connecticut shopping center. Resnikoff seeks to terminate the lease in question and to evict Big G from this location for failure to pay rent. At the hearing there were adduced the following relevant facts:

The April 1978 rent, due April 1st, was tendered late by Big G and was refused by Resnikoff. Big G claims that the rent was tendered late because of continuing disputes with Resnikoff over shopping center maintenance, and also as to who was to pay certain maintenance costs.

The lease provides that a default in rent payment, if not cured within ten days of receipt of a default notice, is a ground for termination. There are questions in this case whether the default notice was properly received by Big G, and also concerning the existence of a "truce" agreement, whereby no action was to be taken by either party before a meeting could be held to discuss certain items in dispute. A meeting regarding the rent and maintenance of the property was scheduled, but never took place.

Big G did tender the April rent in early May, and has tendered the monthly rent payments regularly and timely each month since April, 1978. Resnikoff has refused to accept any rent payments, but has sought relief ancillary to this proceeding, in the form of use and occupancy payments, pending the determination of the lease question. As a result, on April 19, 1979 the Court entered an order requiring Big G to pay interim use and occupancy costs in order to ease the financial hardship to Resnikoff while this protracted matter is litigated.[1]

The filing of a proceeding under Chapter XI by one party to a contract does not preclude termination of the contract by the other party. The contract may be terminated if there has been an important enough breach to "entitle the other party to terminate the agreement under ordinary principles of contract law . . ." 8 *Collier on Bankruptcy* 202 ¶ 3.15(4). The filing of a Chapter XI case does, however, enter into the equities of the situation, largely because of the added presence of the interests of general creditors, which distinguishes this from a dispute involving only the parties to a contract. See, *Queens Boulevard Wine & Liquor Corp. v. Blum*, 503 F.2d 202 (2d Cir. 1974); *Schokebeton Industries, Inc. v. Schokebeton Products Corp.*, 466 F.2d 171 (5th Cir. 1972).

An arrangement under Chapter XI is filed for the purpose of rehabilitating the business for the benefit of creditors, as well as the debtor. See, *Queens Boulevard Wine & Liquor Corp.*, supra. Therefore, the importance of the contract, in this case a lease, to the successful continuation of the business and the fulfillment of the plan must be taken into account, together with other equitable considerations. See, *In re M & M Transportation Co.*, 437 F.Supp. 821 (S.D.N.Y.1977).

According to basic equitable and contract principles, the forfeiture clause in the lease cannot be unconscionable, and the termination must be based on a substantial breach. See, *Tri-Continental Financial Corp. v. Tropical Marine Ent.*, 265 F.2d 619, 626 (5th Cir. 1959); *Nicoli v. Frouge Corp.*, 171 Conn. 245, 368 A.2d 74 (1976); see generally, *Humphrey v. Humphrey*, 254 Ala. 395, 48 So.2d 424 (1950) anno. 31 A.L.R.2d 315. No mere technical breach which falls

---

1. "(1) Defendant/Debtor-In-Possession shall forthwith issue payment in the amount of $32,-000.00 . . . reflecting 13 months of rental due from April 1, 1978 through April 30, 1979.

"(2) . . . shall promptly make payment in the amount of $4,000.00 per month."

within the forfeiture provision of the lease should constitute a ground for termination. In bankruptcy cases, the "court does not look with favor upon forfeiture clauses in leases, [and] They are liberally construed in favor of the bankrupt lessee so as not to deprive [the bankrupt] . . . of property which may turn out to be a valuable asset." *Finn v. Meighan*, 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945). We perceive this principle to apply even more liberally in arrangement cases, and require a showing that the actual or potential harm to the lessor in continuing the lease would far outweigh the benefit the lessee derives from the use of the property. We conclude there has been no such showing in this case.

Non-receipt of a rental payment, coupled with a dispute over maintenance of the septic system and the roof led the parties to schedule a conference to discuss further action under the so-called "truce" agreement. Resnikoff, however, on April 11, 1978 sent a default notice to Big G, notwithstanding the "truce", contends that regardless of the scheduled meeting the default notice sent to Big G was adequate, and that since no rent payment was tendered within the 10 days specified in the lease, Big G has forfeited its right to operate under the lease.

The various portions of the lease dealing with the nonpayment of rent and default notices, namely paragraph 31 requiring notice, paragraph 3.1 with the notice provision deleted and paragraph 32 which is a waiver of the tenant's right to notice, all coupled with Resnikoff's sending of a default notice 10 days after the rent was due and in apparent contradiction of the "truce", are part of Big G's contention that since Resnikoff had already breached the repair covenants of the lease, the withholding of rent was justified. All this is denied by Resnikoff, and renders questions regarding the alleged breach of the lease by Big G totally ambiguous. The Court having been presented with a factual situation which is contradictory, confusing, and unclear, will resolve this dispute according to the most elementary route available to us. Accordingly, Resnikoff which is charged with the burden of proof in this proceeding, has failed to establish a substantial breach of the lease by Big G, and has also failed to show to our satisfaction that defendant's assertions with regard to maintenance are without merit.

■ Israel Resnikoff contends that Big G is the worst tenant he's ever had. This appears to be a personality conflict which is not an issue for the court. There is no evidence that Resnikoff is suffering unreasonable hardship due to Big G's tenancy, other than being deprived of the alleged opportunity to rent the premises to another tenant for more money. This is not a legal basis for nor does it constitute sufficient hardship to terminate the tenancy in the circumstances of this case. See, *Queens Boulevard Wine & Liquor Corp.*, supra. The facts here do not come within the scope of those cases holding that the loss of rent profits added to continual dispute over maintenance may, if substantial, be grounds for upholding a forfeiture clause. See, *In re D. H. Overmyer Co., Inc.* 510 F.2d 329 (2nd Cir. 1975), ("staggering" rent defaults and maintenance problems).

Roof care, according to paragraph 23 of the lease is the responsibility of the landlord. The roof is under a program of "continual maintenance" supervised by McCabe Roofing Services, Inc., which is employed by Resnikoff. This "continual maintenance" program is a common procedure used by landlords overseeing large complexes similar to the Putnam Shopping Center.

The septic system has been a major problem since 1975, and is presently in need of extensive repairs. Resnikoff and Big G had amended the original lease in February 1977 to include a provision for maintenance and payment problems concerning the septic system,[2] yet the disputes over septic care

---

2. "43(b), Commencing March 16, 1977 . . . Tenant agrees to pay to the landlord . . . a 'pro rata' share . . . of all reasonable costs and expenses incurred by Landlord . . for the cost of repairs for replacements to all . . . common service areas in the Shopping Center. . . . 'Common Service Area' shall mean . . . service of draining facilities within the Shopping Center."

continued. During the trial, and after repeatedly asserting the lessee was responsible for septic maintenance, Israel Resnikoff finally acknowledged that the septic system was the landlord's responsibility and was in drastic need of repairs.

Recent bankruptcy decisions in Chapter X or XI cases which have granted termination of leases have involved long standing, serious breaches by the tenant, or cases involving clearly impossible business revitalization plans. See, *In re D. H. Overmyer Co., Inc.,* supra ("staggering" breaches and impossible plan); see also, *Schokbeton Industries, Inc.,* supra.

In this case, the plan which has been filed and accepted, and is practically in order for confirmation, appears to be viable and encompasses the entire Big G operation, including, of course, the Putnam store which is the second or third largest income producing store in the chain. While the Putnam store is not the only asset of Big G, it is an integral and crucial part of this rehabilitation proceeding.

██ Requests for termination of leases involving large assets important to the revitalization plans are not frequently granted. See, *Queens Boulevard Wine & Liquor,* supra; *Weaver v. Hutson,* 459 F.2d 741 (CCA 3d 1972); *In re M & M Transportation Co.,* supra. It seems clear ". . . that a bankruptcy court may exercise its equitable discretion to deny enforcement of a termination clause when termination of the lease would render an otherwise promising arrangement under Chapter XI impossible." *In re D. H. Overmyer Co., Inc.,* supra at 332. It would be unconscionable and an abuse of discretion in the circumstances of this case to allow termination, based on a technical breach, while this lease constitutes a valuable asset of the Debtor, as well as a crucial element to the success of the Chapter XI proceeding.

Based on the foregoing discussion, reasons, findings, and conclusions, the complaint of Chase/Resnikoff to terminate the lease in question is denied.

The parties are directed to present a judgment in accordance with the terms of this Memorandum for entry within ten (10) days.