In the Matter of LIBSON SHOPS, INC., Debtor.

Bankruptcy No. 82–00308(3).

United States Bankruptcy Court, E.D. Missouri.

Nov. 3, 1982.

Curtis L. Mann, St. Louis, Mo., for debtor.

Lloyd A. Palans, St. Louis, Mo., for Creditors Committee.

Berry S. Schermer, John G. Young, Jr., Stephen C. Turley, John D. Anderson, John W. Sunnen, St. Louis, Mo., for respondents.

## MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

The debtor-in-possession and the Creditors Committee in this Chapter 11 case have filed a joint application to approve a bulk sale of the debtor's merchandise to one Jerome Schottenstein. No written contract has been submitted to the Court, but the application contains an outline of the parties' agreement. In addition to the terms of the sale, the application refers to a proposed compromise of certain claims by and against the debtor's shareholders, officers, and directors, and a statement as to possible dividend to general creditors if the bulk sale is approved.

Notice of the joint application was given by the applicants to all creditors on October 20, 1982. Six objections were timely filed on behalf of six lessors which own or operate shopping centers in which ten of the debtor's retail outlets are located. None of the lessors objected to the proposed settlement of the claims by and against the debtor's shareholders, officers, and directors, or to the proposed bulk sale price. However, each objection took exception to the following proposal set out in the joint application:

The offer of Jerome Schottenstein contemplates that the Libson stores be run as a "going out of business" sale at each location for a period up to sixty (60) days at Mr. Schottenstein's cost and expense.

All of the written shopping center leases here contain a clause whereby the tenant (debtor) agreed not to conduct a sale variously described as a bankruptcy sale, a liquidating sale, a fire sale, an auction sale, or a going-out-of-business sale from the leased premises.

Based upon a consideration of the record as a whole, including the testimony and arguments presented at the combined hearing on November 3, 1982, the following findings and conclusions are entered:

The proposed going-out-of-business sale is the type of activity which was intended to be prohibited by the lease clauses referred to above.

As stated at the hearing, the purpose for the inclusion of such clauses is to preserve the image of the shopping center, and to attempt to maintain a certain quality and level of inventory at the various retail outlets.

The debtor has little or no possibility of successfully reorganizing under Chapter 11 of the Bankruptcy Code. Its future activities, therefore, must be regarded as part of an overall plan of liquidation.

The lessors have the right to demand debtor's full compliance with the terms of the written leases.

The Bankruptcy Code does not specifically prohibit the enforceability of the type of lease clause referred to here.

The proposed going-out-of-business sale to the public would provide continued employment for at least some of the debtor's employees.

The proposed sale to the public would provide metropolitan area shoppers with an opportunity to purchase items at reduced prices just prior to the holiday season. If the restrictions in the lease clauses are enforced, this benefit to the area would be lost.

As a result of the continued operation of the debtor's stores and the advertising in connection with the sale to the public, the other shopping center tenants will benefit from the anticipated increased customer traffic.

The lessors have not suggested a specific injury or damage which would result from the conduct of the sales to the public as described here.

Congress has authorized the Bankruptcy Court to compromise private rights which may conflict with a debtor's ability to receive the full benefit of a reorganization or liquidation proceeding. 11 U.S.C. § 522(f); 11 U.S.C. § 365(e).

## CONCLUSIONS

In this proceeding, the Bankruptcy Court, as a court of law and equity, must balance the congressional intent as expressed in the Bankruptcy Code, with the parties' right to rely on the enforceability of a bargained-for agreement. As a principle of law, the latter consideration must be given great emphasis. However, if enforcement of the contract right is in conflict with the federal law, the Bankruptcy Court must examine the reasonableness of the enforcement of the contract terms.

The lessors in this matter are sincerely interested in maintaining the image of the respective shopping centers. They contend that going-out-of-business sales are disruptive of that image and cause an imbalance in the planned tenant mix. In the economic climate which exists today, such subtleties may in fact disturb the delicate profit/loss balance for other marginal tenants in the shopping center. Conceivably, a series of going-out-of-business sales by different merchants could have a disastrous effect on the shopping center and on the community. Such results, however, would be the extreme; and, given the present economic uncertainty, the assumptions which have suggested the possibility of such results may be inaccurate.

It would appear, then, that the purpose of the restrictive clause (i.e., preserving the shopping center image) may be accomplished without sacrificing the debtor's benefits under the federal law, or the sale opportunities for the area consumers. A liquidation sale, conducted by the debtor, using its employees, from its present retail locations, for a fixed reasonable period of time, under the supervision of the Bankruptcy Court would accomplish both objectives.

To the extent that this memorandum and order permits the debtor to conduct a going-out-of-business sale in contravention of the restrictive clauses in these leases, such clauses are found to be unenforceable in this Chapter 11 proceeding.

Therefore, the lessors' objections to the joint application to sell debtor's inventory are DENIED; and the debtor is permitted to conduct going-out-of-business sales consistent with the conditions set out in the attached order.

## ORDER

At Saint Louis, in this District, this 3rd day of November, 1982.

On this date, the Court entered an order which approved the sale of debtor's inventory subject to certain requirements and conditions. After studying the order, the attorney for the Creditors Committee, the debtor's attorney, and the representative of the prospective purchaser announced that the previous offer to buy was being withdrawn, and that an amended offer was being submitted. The debtor's counsel and the attorney for the Creditors Committee accepted the amended offer and requested Court approval of an oral application to sell.

The terms of the amended offer are essentially the same as the original offer, except that no sales will be conducted from the debtor's present retail locations in the metropolitan area, and that the debtor shall bear the expense of inventorying, packing, and transporting the sold inventory up to $15,000.00.

Considering the record as a whole, the Court concluded that the amended offer may in fact result in an amount of money

which will produce a greater dividend to general creditors than that which may have resulted from the earlier offer. And, there having been no other objections to the previous joint application to sell inventory, the Court announced its findings, and

IT IS ORDERED that the amended joint application of the Creditors Committee and the debtor-in-possession to sell inventory according to the terms announced this date be and hereby is approved; and that in the interests of economy and expediency, no further notice of the amended application need be given; and that the Creditors Committee is to file a written statement of the terms of the amended purchase offer.