In re **TOBAGO BAY TRADING COMPANY, f/k/a World Bazaar, Inc., a/k/a World Bazaar and a/k/a Curious Cargo, Debtor.**

**Bankruptcy No. 90–02195.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

March 23, 1990.

Robert A. Bartlett, Hicks, Maloof & Campbell, Atlanta, Ga., for debtor.

Mark A. Kelley, Kitchens, Kelley, Gaynes, Huprich & Shmerling, Atlanta, Ga., Judy E. Weisman, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for objectors.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court are the objections of lessors Gwinnett Place Associates, L.P. d/b/a Gwinnett Place Mall ("Gwinnett Place"), CF Shannon Associates d/b/a Shannon Southpark ("Shannon"), JMB Group Trust III d/b/a Hickory Ridge Mall ("Hickory Ridge"), Ridgeland Associates d/b/a Northpark Mall ("Northpark"), JMB Group Trust I d/b/a Dayton Mall ("Dayton"), New England Development, Inc. d/b/a Apple Blossom Mall ("Apple Blossom"), and CFS Associates Limited Partnership d/b/a Charlottesville Fashion Square Mall ("Fashion Square") to the court's authorization of debtor's proposed "retail store closing program" as to premises owned by respective objectors and leased to debtor. This is a contested matter and a core proceeding under 28 U.S.C. § 157(b). After a review of the record and the applicable law, the court makes the following findings and conclusions.

## FACTS

At a conference with the court on March 14, 1990, debtor's counsel stated that its retail stores at Hickory Ridge and Northpark Malls had already closed or were in

the process of closing, and counsel stipulated the issue before the court is moot as to those two parties. Counsel stipulated that the issue is not ripe with respect to Dayton, Apple Blossom, and Fashion Square Malls since debtor has no plans at present to close stores at those locations. However, debtor does plan to liquidate inventory and other property in conjunction with store closings at Gwinnett Place and Shannon Malls ("objectors") in the near future. This order will address the objections of those two parties. Counsel stipulated that this question can be disposed of as a matter of law, and there is no need for a further evidentiary hearing.

At the hearing on March 8, 1990, debtor presented evidence in support of its motion and proposal to close certain of its retail stores as a preliminary step in its efforts to reorganize. In so doing, debtor intends to liquidate inventory and other property at the store locations to be closed. Debtor acknowledges that the stores are located in "shopping centers" under leases with objectors, copies of which leases are attached to the objection. Paragraph 1(*o*) of the leases with Gwinnett and Shannon Malls states as the "Permitted Use" of the premises the "[r]etail sale of imported and domestic home decorative and gift merchandise, as is sold in other World Bazaar Stores."[1] Paragraph 23 of the Gwinnett Place lease and 22 of the Shannon lease, titled "Operation of Business," provide that lessee agrees "not to conduct any real or fictitious 'going-out-of-business,' auction, distress, fire or bankruptcy or similar sale...."[2] Debtor stipulates that its proposed liquidation sales may be contrary to the operation of business provision. The inventory and other assets of these respective stores can best be liquidated by on-site sales from the respective stores. At least one objector has suggested that debtor could conduct sales in stores at locations whose leases do not forbid such sales or removal of the property to a warehouse to be sold. There is no evidence before the court that such proposals are economically feasible alternatives that would not materially and adversely harm the interests of the estate and creditors. Objectors have offered no evidence of any economic or other harm to lessors or other tenants that will result from such sales.

## DISCUSSION

▮ Debtor cites *In re Libson Shops, Inc.*, 24 B.R. 693 (Bankr.E.D.Mo.1982), as authority that a clause in a lease prohibiting bankruptcy or similar sales are unenforceable in Chapter 11. Objectors contend that *Libson Shops* has been effectively overruled by the Bankruptcy Amendments and Federal Judgeship Act of 1984,[3] and that shopping center leases must be strictly honored and enforced. In support, objectors point to the addition of section 365(d)(3) by the 1984 amendments. They cite no case law, however, interpreting this section.

Objectors' reliance on 11 U.S.C. § 365(d)(3) is misplaced. That section provides as follows:

> The trustee shall timely perform all the obligations of the debtor, *except those specified in section 365(b)(2)*, arising from and after the order for relief under any unexpired lease of *nonresidential real property*, until such lease is assumed or rejected....

11 U.S.C. § 365(d)(3) (emphasis added). According to its legislative history, the purpose of the 1984 amendment adding section 365(d)(3) with its "timely performance" requirement was to "insure that debtor-tenants pay their rent, common area, and oth-

---

1. *See* Objection to Entry of Final Order Authorizing Debtor's Use of Cash Collateral And To Sell Certain Property of the Debtor, The Proceeds of Which Constitute Cash Collateral, Exhibit "B," ¶¶ 1(*o*), at 9, 11 (filed Mar. 6, 1990). This provision is identical in the leases for Gwinnett Place and Shannon Southpark Malls.

2. *See* Objection to Entry of Final Order Authorizing Debtor's Use of Cash Collateral And To Sell Certain Property of the Debtor, The Proceeds of Which Constitute Cash Collateral, Exhibit "B," ¶¶ 23(k), 22(k), at 10, 12 (filed Mar. 6, 1990). This provision is identical in the leases for Gwinnett Place and Shannon Southpark Malls.

3. Pub.L. No. 98-353, 98 Stat. 361 (1984).

er charges on time pending the trustee's assumption or rejection of the lease." 130 Cong.Rec. S8895 (daily ed. June 29, 1984) (statement of Sen. Hatch), *reprinted in* App. 3 *Collier on Bankruptcy* XX–70–71 (15th ed. 1989); *see, e.g., In re T & H Diner, Inc.,* 108 B.R. 448 (D.N.J.1989). Such "timely performance" is not an issue before the court at this time.

Nothing in the wording of this section suggests that it is to be applied more stringently with respect to shopping center leases than other leases of nonresidential real property. Its plain language makes this provision applicable to unexpired leases of "nonresidential real property," which would include shopping centers and other commercial properties. 11 U.S.C. § 365(d)(3). Certainly, Congress knows how to achieve such a result if it so desires. It has, in fact, made certain Code sections applicable to shopping center leases. *See* 11 U.S.C. § 365(b)(3) (addressing a lease of "real property in a shopping center"). It was this Code section in which, as objectors state, the language was revised by the 1984 amendments by deleting the word "substantially" as it modified breaches of lease provisions. *See* 11 U.S.C. § 365(b)(3)(C); 130 Cong.Rec. S8895 (daily ed. June 29, 1984) (statement of Sen. Hatch), *reprinted in* App. 3 *Collier on Bankruptcy* XX–71 (15th ed. 1989). The problem Congress addressed in the 1984 amendments to section 365(b)(3) was the assumption and assignment of shopping center leases in a manner that violated the general use provisions and which resulted in a disruption of the shopping center tenant mix. *See* 130 Cong.Rec. S8895 (daily ed. June 29, 1984) (Statement of Sen. Hatch), *reprinted in* App. 3 *Collier on Bankruptcy* XX–71–72 (15th ed. 1989); *In re Vista VI, Inc.,* 35 B.R. 564, 568 (Bankr. N.D.Ohio 1983).

It appears to the court that the objectors are confusing the "permitted use" clause of the lease with a provision relating to the "operation of business." Congress was primarily concerned with the way in which the courts were modifying general use lease provisions that might have a negative impact on the shopping center as a whole.

As noted by the court in *In re Vista VI, Inc.* concerning the purpose of the revisions to section 365(b)(3):

The proposed legislation is intended to prevent assignments [of leases] which change the entire nature of the tenant's business. Examples mentioned in the Senate report include shifts from a men's wear to women's wear store, or from a grocery to a toy store.

*In re Vista VI, Inc.,* 35 B.R. at 568. That is not an issue in this case. The "permitted use" in debtor's leases is the "retail sale of imported and domestic home decorative and gift merchandise." Debtor's proposal does not change the nature of this "permitted use," but seeks to liquidate its inventory and other assets to facilitate its reorganization and to maximize the returns for the benefit of its creditors. This is consistent with the legislative policies of the Bankruptcy Code. Where provisions of an unexpired lease conflict with these policies to prevent or hinder reorganization, the court may find such provisions to be unenforceable. *In re Libson Shops, Inc.,* 24 B.R. at 695; *In re Vista VI, Inc.,* 35 B.R. at 568.

Objectors acknowledge there is no case directly addressing the impact of the 1984 amendments on the issue before the court, but cite *In re Joshua Slocum, Ltd.,* 99 B.R. 250 (Bankr.E.D.Pa.1989), in support of their position. The *Joshua Slocum* court, however, held a "fire sale" provision in a non-shopping center lease to be unenforceable because the landlord could not meet its burden to prove that the provision was material or that its breach economically jeopardized him or his other tenants. *Id.* at 251. The court implied that it would have applied a different rule if the lease had been in a shopping center. *Id.* at 251, 256. In fact, that court cited the holding of *Libson Shops* favorably with respect to the unenforceability of "fire sale" clauses. *See id.* at 259.

Section 365(d)(3), on which objectors rely, specifically excepts from timely performance lease provisions which relate to "the insolvency or financial condition of the debtor." 11 U.S.C. § 365(d)(3); *see* 11

U.S.C. § 365(b)(2)(A); *see also* 11 U.S.C. § 365(e)(1)(A). When the "operation of business" provision is considered in the context of the "permitted use" provision of these leases, the logical conclusion is that bankruptcy or similar sales clearly relate to the insolvency or financial condition of the debtor. If granted, debtors' proposal does not change the "permitted use" that is the nature of the business, but merely permits the liquidation of property in a bankruptcy context. The parties dispute whether or not the subject lease provision is an *ipso facto* termination clause.[4] However, the prohibitions in section 365(b)(2)(A) and (e)(1)(A) are broader than just *ipso facto* clauses. *See* 2 *Collier on Bankruptcy* ¶¶ 365.04[2], 365.06 (15th ed. 1989). The court concludes, therefore, that the subject lease provisions prohibiting this Chapter 11 debtor from liquidating its inventory at its retail store locations as a preliminary step in its efforts to reorganize is a lease provision "relating to the insolvency or financial condition of the debtor." *See* 11 U.S.C. § 365(b)(2)(A), (e)(1)(A).

Enforcement of such a clause under the facts of this case would be inconsistent with federal policy and with the legislative design as expressed by the Bankruptcy Code. Section 365 is made applicable to Chapters 7, 11, 12, and 13 pursuant to section 103(a). In Chapter 7, the trustee has a statutory duty to liquidate the estate property at the best prices possible, expeditiously, and in the best interests of creditors. *See* 11 U.S.C. § 704. In Chapter 11, a debtor in possession exercises the powers of a trustee and has a similar duty to administer estate property and conduct estate financial affairs for rehabilitation purposes.[5] *See* 11 U.S.C. §§ 1106, 1107.

The Bankruptcy court, as a court of equity, must balance the congressionally expressed public policy of the Bankruptcy Code with the objectors' rights to rely on their bargained-for agreement. *In re Howe,* 78 B.R. 226, 230 (Bankr.D.S.D.1987); *In re Libson Shops, Inc.,* 24 B.R. at 695. Where the benefit to the debtor outweighs the potential harm to the lessor, the court may exercise its equitable powers to deny enforcement of a clause that would have severe negative consequences on a Chapter 11 debtor's ability to reorganize. *See In re Vista VI, Inc.,* 35 B.R. at 566 (quoting *In re D.H. Overmyer Co.,* 510 F.2d 329, 332 (2d Cir.1975)); *In re Libson Shops, Inc.,* 24 B.R. at 695; *In re Sapolin Paints, Inc.,* 5 B.R. 412, 422–23 (Bankr.E.D.N.Y.1980). To further legislative policies, it is sometimes necessary to compromise private rights which conflict with a debtor's statutory right to receive the full benefit of its reorganization or liquidation efforts. *In re Howe,* 78 B.R. at 230. Such is the case before the court.

Objectors have made no showing that they or their other tenants will suffer substantial economic detriment as a result of the failure to enforce this "operation of business" provision. It is apparent to this court that debtor's efforts to reorganize will be significantly impaired to the detriment of creditors if the subject lease provisions are strictly enforced. Here, as in most cases, the prohibition of a bankruptcy or similar sale would result in onerous and burdensome costs to an already financially distressed debtor's estate by requiring removal of assets to an off-site location. Further, the debtor's estate would lose the benefit of the market that it had developed. The potential harm and injury to creditors and to the debtor's estate is substantially greater than the potential harm to the objectors. The court concludes, therefore, that the subject lease provisions are in conflict with legislative policies of the Bankruptcy Code, and the objections are without merit.

---

4. *Ipso facto* clauses automatically terminate the lease or permit the lessor to terminate, at his option, in the event of bankruptcy or some other insolvency event. *See General Motors Acceptance Corp. v. Rose (In re Rose),* 21 B.R. 272, 276 (Bankr.D.N.J.1982); 2 *Collier on Bankruptcy* ¶ 365.06 (15th ed. 1989).

5. A trustee or debtor who is in possession has similar duties under Chapters 12 and 13. *See* 11 U.S.C. §§ 1202, 1203, 1302, 1303.

Based on the foregoing, it is

ORDERED that the objections of Gwinnett Place and Shannon Malls are hereby overruled, and debtor may proceed with its "retail store closing program" as authorized by the cash collateral order, and it is

FURTHER ORDERED that the objections raised by Hickory Ridge and Northpark Malls, at which location debtor's stores have already closed, are determined to be moot, and it is

FURTHER ORDERED that the objections raised by Dayton, Apple Blossom, and Fashion Square Malls are not ripe for a determination, and should debtor determine that it desires to conduct any bankruptcy, going out of business, distress or similar sales at those locations, each respective objector shall be given at least seventy-two hours' written notice of such intention and an opportunity to be heard before any such sale may be conducted.

IT IS SO ORDERED.