**In re ANTWERP DIAMOND, INC. and Royal Acquisition, Inc., Debtors.**

**Bankruptcy Nos. B92–10152, B92–10153.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

April 17, 1992.

David O. Simon, Cleveland, Ohio, for debtor.

Saul Eisen, Javitch, Block, Eisen & Rathbone, Cleveland, Ohio trustee.

Stephen D. Hobt, Cleveland, Ohio for Society National Bank.

Brian A. Bash, Cleveland, Ohio, for Continental Jewelry.

Paul Greenberger, Beachwood, Ohio, for Gogalick & Sons Corp.

Lawrence C. Oscar, Hahn, Loeser & Parks, Cleveland, Ohio for Larry J.B. Robinson.

James M. Lawniczak, T. David Mitchell, Calfee, Halter & Griswold, Cleveland, Ohio.

Patrick J. Keating, Buckingham, Doolittle & Burroughs, Akron, Ohio for Harold Freeman Jewelry Mfg. Co.

Glenn Schmitt, Thompson, Hine & Flory, Cleveland, Ohio for Iverson Mall Ltd. Partnership, Inc.

Kent C. Krause, Spears & Riley, P.C., Dallas, Texas for Lendorff-Tysons.

Mitchell Devack, Franklin Square, N.Y. for Unsecured Creditors Committee.

Gerald S. Krainess, Cleveland, Ohio for Pancis Gems, Inc.

Richard Phillips, Stephen Cheatham, Carol A. Jones, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio for trustee.

Jeffrey P. Harris, Harris, Harris & Field, Cincinnati, Ohio for Schottenstein Stores Corp.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

Debtor corporations Antwerp Diamond Centre, Inc. (Antwerp) and Royal Acquisition Corporation (Royal), retail jewelers, caused to be filed their respective voluntary Chapter 11 petitions on January 13, 1992 and continued business operations as debtors-in-possession. Separately, the Debtors operated retail jewelry stores in various shopping mall locations in Northeast Ohio and in the metropolitan Baltimore, Maryland area. A few days after the petitions were filed, the sole owner of both Antwerp and Royal decided to terminate the business operations of both Debtors and, subsequently, filed motions to sell substantially all of their assets outside the ordinary course of the Debtors' business. Following approval of such motions, the U.S. Trustee filed a motion to appoint a case trustee to administer the assets of both debtor corporations. The motions were granted and Chapter 11 trustees were appointed in both cases.

Attendant to the Court authorized sale of the assets in both cases, the present matters are before the Court for confirmation of those sales. At the confirmation hearing, various commercial retail tenants in certain of the shopping malls in which the Debtors operated their retail businesses objected to the confirmation of the sales. Principally, the objectants alleged that following the termination of the Debtors' retail business in the affected shopping malls, the Debtors removed all inventories from the discontinued retail stores and placed the inventories in other locations outside the malls for further disposition. The objecting tenants further allege that such a use by the prospective asset purchaser would be in violation of the master lease affecting other retail tenants in the shopping mall. This representation was unrefuted by the Debtors. As a condition of purchase, the successful bidder would be allowed to use certain of the Debtors' leased shopping mall stores to conduct going out of business sales.

It is of particular significance to note that since the Debtors' voluntarily ceased operations shortly after petition filings, there was no recommencement of business operations by the Debtors. Although both Debtors filed respective motions for an extension of time in which to assume or reject certain unexpired leases until a specified time in June of 1992, no retail lease affected by the subject sales has been assumed. In fact, the Debtors and the case Trustee have acknowledged that the Debtors do not intend to assume the shopping mall leases but, rather, as a condition of purchase, intend to allow the successful purchaser of the Debtors' assets to use the leased premises for a prescribed time period in order

for the asset purchaser to further dispose of the acquired assets.

The legislative purpose of § 365(b)(3) was "to prevent assignments of leases which change the entire nature of the Trustee's business."[1] *Tobago Bay Trading Co.*, 112 B.R. 463 (Bankr.N.D.Ga.1990). The question that arises in the present matter, by reason of the aforementioned condition of sale, is whether there has been an assignment of the Debtors' rights and obligations under the subject tenancy lease? In other words, does allowing the successful auction bidder permission to conduct a going out of business (G.O.B.) sale on certain of the Debtors' leased premises, effectively, constitute an assignment of the affected lease? This question must be answered in the affirmative and is considered in light of the fact that (1) both Debtors have ceased all operational activity within a few days following the voluntary filings of their respective Chapter 11 petitions and removed all of their personal property inventories to other non-retail storage locations. (2) Neither Debtor recommenced retail operations following the postpetition retail business shut-downs; (3) Neither Debtor has assumed any retail leases; rather, both Debtors have sought an extension of time in which the successful auction bidder, would be allowed to use certain leased retail premises for the buyer's purpose of conducting a G.O.B. sale; (4) It is clear from the presentation made by the several parties, including the Debtors' counsel and the case trustee, that the Debtors do not contemplate an assumption of any of their respective retail leases.

As such, with the Debtors no longer having any operational activity, it is clear that any continued use of the leased premises by the successful auction bidder would be tantamount to an assignment of the Debtors' interest in those affected premises. To the extent that the leases on those leased premises contain anti-G.O.B. sale clauses, such intended activity by the Debtors' bidder would be in derogation of the rights of those other tenants similarly affected by those leases and clearly would be violative of § 365(b)(3)(C) which reads, in part:

> § 365(b)
>
> (3) For the purposes of para. (1) of this section and para. (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—
>
> (C) that assumption or assignment of such lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center.... (Emphasis added).

As indicated above, it is clear that the Debtors have assumed no leases postpetition. Nor has either Debtor assigned any of their shopping center leases to date. Accordingly, oral objections by affected landlords and affected retail tenants in one sense are premature on this subject, as the only matter presently before the Court is the Trustee's report of sale. In another sense, however, their concerns are not premature. In the latter regard, it is duly noted that no written objections have been made regarding the propriety of the sale of either Debtors' personal property. The effect of what the Debtors' seek to accomplish, however, is the allowance of a condition of purchase, which was not previously noticed to other would-be bidders prior to the sale; not approved by the Bankruptcy Court; and lastly, a condition of purchase which is not countenanced under the Bankruptcy Code. Adroitly, the conditional asset sales in which the Trustee seeks confirmation offers the practical effect of dictating some of the terms of an assumption and assignment which are yet to come before the Court for consideration. In this regard, neither the Trustee nor the prospective purchaser should be allowed to circumvent the procedural requirements of bankruptcy law in order to effectuate an

---

**1.** See, Pub.L. No. 98–353, 98 Stat. 333 (July 10, 1984); S.Rep. No. 527, 97th Cong., 2d Sess. 3 (1982); S.Rep. No. 98–70, Note 13, at 18.

asset sale. In brief, the proposed sales, as presented, implicitly assign the Debtors' respective obligations under the affected leases to the would-be-purchaser without an assumption and formal assignment to an assignee.

Contrary to the Debtors' and Trustee's assertions, it is of no significance that the commercial tenants in the affected shopping centers are not creditors of the Debtors' estate. What is significant, if proven by a preponderance of the evidence at a hearing on a motion to assume an assignment, is that such other tenants are participants in a master lease which has express provisions prohibiting the kind of use contemplated by the purchaser of the Debtors' assets.

Actually, the § 365(b)(3) issue only arises at the time there is an attempted assumption or assignment by the Debtors postpetition. Presently, however, the Debtors and the prospective purchaser are attempting through the asset sales, as a condition of purchase, to effectively vary the use obligations of the affected leases without an assumption or an assignment being properly prosecuted before the Court. Such an effort is procedurally improper and will not be approved.

As indicated above, no written objections have been made regarding the propriety of the sale. The sale was noticed, however, without an indication, express or otherwise, which addressed a subsequent G.O.B. sale to be conducted by the successful bidder. To have advertised such an allowance potentially would run counter to § 365(b)(3)(C) of the Code, which Code section has been raised as an issue in this matter. To approve the sale as presently intended by the Debtors would only serve to abridge the statutory rights of parties which were addressed by the Congress in the Amendments to § 365 of the Bankruptcy Code.

Special statutory provisions pertaining to the assumption and assignment of retail leases of debtors involved in shopping cen-ter complexes have specifically been included in the Bankruptcy Code since its enactment in 1978. In 1984, those provisions pertaining to shopping center leases were clarified in the 1984 amendments to the Bankruptcy Code. Prior to 1984, a debtor could vary a use provision on a shopping center lease as long as the variance did not cause substantial harm to the landlord and other commercial tenants operating within the shopping center complex. One of the principal legislative purposes of the 1984 shopping center amendments to § 365 was to delete the "substantial" aspect of any harm resulting from such a "use" modification by a Debtor and, rather, require strict compliance with the "use" provisions contained in the affected lease. The condition of purchase sought by the present auction bidder would, if approved, modify a "use" provision under an affected lease, without affording the affected landlord and other affected commercial tenants an opportunity to timely assert their rights afforded under § 365(b)(3)(C) which requires that any assumption or assignment of such lease be subject to all of the lease provisions and will not breach any provision contained in "any other lease" or master agreement pertaining to the shopping center.

Case authorities cited by the Debtors in support of their position are not persuasive.[2] The well-reasoned opinion from this District issued in the 1983 *Vista* case was issued prior to the 1984 Code amendment and, for that reason, is no longer applicable. The same holds true for the 1982 *Lisbon* opinion cited by the Trustee's counsel. In the *Tobago* case cited by the Trustee's counsel, that case is post–1984 but was decided on grounds other than the issue before this Court. Therein, Judge Cotton allowed the bankruptcy sale which included a variance from the affected lease's "operation of business" clause, as opposed to a violation of the "permitted use" clause. In the present situation, what the Debtors and the successful auction bidder are attempting is a variance from the

---

**2.** *In re Tobago Bay Trading Co.,* 112 B.R. 463 (Bankr.N.D.Ga.1990); *In re Vista VI, Inc.,* 35 B.R. 64 (Bankr.N.D.Ohio 1983); and *In the Mat-* *ter of Libson Shops,* 24 B.R. 693 (Bankr.E.D.Mo. 1982).

869

"permitted use" clause of the affected leases. To that extent, such effort would violate § 365(b)(3)(C) of the Code. A survey of relevant case law to date, shows no court allowing a use deviation that would be in derogation of § 365(b)(3)(C).

Accordingly, the motion for confirmation of the subject asset sales is hereby denied. The Trustee, forthwith, is hereby ordered to re-notice a sale of the subject assets pursuant to Code and Rule requirements. To the extent a lease assumption period has been extended in these cases authorizing a G.O.B. sale, such is hereby vacated. The objections of Sterling, Inc. and Sterling Jewelers, Inc. are sustained.

IT IS SO ORDERED.