**In re TECH HIFI, INC., Debtor.**

**Bankruptcy No. 84–504–JG.**

United States Bankruptcy Court,
D. Massachusetts.

May 30, 1985.

Judy Mencher, Goodwin, Procter & Hoar, Boston, Mass., for petitioner.

Remy J. Ferrario, Shea & Gould, New York City, for respondent.

## MEMORANDUM

THOMAS W. LAWLESS, Chief Judge.

This contested matter came before the Court for hearing on the Debtor's Notice of Intent to Sell Real Estate Lease (Valley Stream, New York), filed on January 9, 1985. By the notice of sale, the debtor notified interested parties of its intention to assume and assign the lease and provided a deadline for filing objections and counter-offers. Four counter-offers were filed. The landlord, Toys "R" Us, Inc., filed an objection. At the hearing on both matters held on February 11, 1985, an auction of the debtor's interest in the lease was held. The successful bidder was Leather Warehouse of New Jersey, Inc. for a price of $54,000. After indicating that the sale would proceed only if the objection were overruled, the Court then heard testimony of several witnesses and received into evidence the following documents: the lease, financial statements of The Leather Warehouse Group, and photographs of the premises and shopping center.

In support of its objection the landlord argues: that the debtor did not file a proper motion for assumption of the lease; that the debtor did not present evidence to demonstrate that assumption and assignment of the lease is in the best interests of the estate; that the proposed assignee cannot provide adequate assurance of future performance under the lease, and that the proposed assignee's use of the shopping center premises for sale of adult leather clothing violates the lease's restrictive use clause and negative covenant.

Clause 3A of the lease provides:

"[t]enant shall use demised premises solely for the sale, storage, and repair of consumer electronics products, including video disks and video games and related assessories".

Clause II K provides:

"[t]enant ... shall not, at any time without first obtaining the landlords consent in writing.... use the premises for the retail sale of toys, juvenile furniture, pools, outdoor play equipment, wheel goods, layettes, and health and beauty aids, furnishings, clothing, books, records, family and adult games, recreational equipment and, candy and sporting goods or any other items customarily carried in a modern toy store or landlord's store chain. Notwithstanding the foregoing tenant may sell items customarily carried in tenant's store chain".

The procedural objection is that the debtor did not file a Motion to Assume and Assign the Lease prior to sending notice of the sale. This is incorrect. The debtor did file a Motion to Assume and Assign the Lease on December 27, 1984 but did not request a hearing on the Motion for the same date and time as for objections to the notice of sale. When this procedural problem was presented at the hearing, I indicated that the Motion to Assume and Assign would be considered in conjunction with the notice of sale and objections thereto because the identical dispute and issues were raised by both pleadings. Indeed, the landlord's objection to the sale is entitled "Objection to Debtor's Proposed Assignment of Lease (Valley Stream, New York)". Therefore, the landlord was aware that assumption and assignment were the subject of the February 11 hearing despite the absence of the Motion from the schedule.

Next, the landlord argues that court approval of the assignment should be withheld because the debtor has not shown that assumption and assignment are in the best interests of the estate. This objection is without merit.

"Court approval of a debtor-in-possession's judgment that assumption of a lease is in the best interest of the debtor's business should not be withheld on the basis of a second-guessing of the debtor's judgment ... As long as assumption of a lease appears to enhance a debtor's estate, Court approval of a debtor-in-possession's decision to assume the lease should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of The Bankruptcy Code, and particularly of 11 U.S.C. § 365. *See Allied Technology, Inc., v. R.B. Brunemann & Sons, Inc.,* 25 B.R. 484 (Bankr.S.D.Ohio, 1982).

■ In this case, the assumption and assignment of the lease clearly benefits the estate because the debtor's estate is enhanced by the approximate $25,000 net sales price (after curing defaults) and is released from liability for rent for this store, which is no longer in operation. The debtor's business judgment that the lease should be assumed and assigned is reasonable.

The landlord next argues that the debtor may not assume and assign the lease because it is unable to provide "adequate assurance of future performance under the lease" by the assignee. The term adequate assurance of future performance of a shopping center lease is defined in § 365(b)(3): [1]

"For the purposes of paragraph (1) of this section, adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—

(A) of the source of rent and other consideration due under the lease;

(B) that any percentage rent due under the lease will not decline substantially

(C) that assumption or assignment of such lease will not breach substantially any provision such as radius, location,

---

1. The amendments to this section by The Bankruptcy Amendments and Federal Judgeship Act of 1984, 11 U.S.C. § 365(b)(3) (July 10, 1984) apply prospectively to cases filed after October 9, 1984, and therefore are not operative in this case.

use, or exclusivity provision, in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption of assignment of such lease will not disrupt substantially any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3)(A), (B), (C), and (D) (1979).

■ The landlord first argues that the proposed assignee cannot provide the landlord with adequate assurance that the $2750 rent will be paid. The court does not agree. Adequate assurance of future performance with respect to the source of rent to be paid means that the proposed assignee has the ability to satisfy the financial obligations imposed by the lease. *In re Evelyn Byrnes, Inc.,* 32 B.R. 825, 829 (Bankr.S.D.N.Y.1983). An absolute guarantee, such as a letter of credit, is not required to meet this standard. *In re Alipat, Inc.,* 36 B.R. 274 (Bankr.D.Mo.1984). Here, the lease is to be assigned to a newly formed corporation which is a subsidiary of The Leather Warehouse, Inc. The financial statement of The Leather Warehouse, Inc., and subsidiaries, which have operated twelve stores for thirteen years in New York and New Jersey, show total assets of $2,849,579 and retained earnings of $1,127,-384 as of the end of April 1984. The company's president testified that its financial position has only improved since April 1984. Each store has sales of approximately $800,000 per year. Leather Warehouse, the parent, is willing to guarantee the lease obligations. The principals of the group are also willing to personally guarantee the lease. Leather Warehouse is willing to post a security deposit of up to six months rent in the form of a letter of credit. These assurances are more than adequate to ensure that the Leather Warehouse is able to perform the lease's rent obligations. Therefore, the debtor has complied with subsection (A) of § 365(b)(3).

■ The landlord contends that the assignee cannot provide adequate assurance of future performance with respect to this shopping center lease because the proposed use as a retail store for sale of leather goods violates this particular leases's restrictive covenant and use clauses. This argument misreads the statute. The landlord, in its brief, conveniently omits the complete version of this subsection which is worth repeating:

"... adequate assurance of future performance if a lease of real property in a shopping center lease indicates assurance—

(c) that assumption or assignment of such lease will not breach substantially any provision, such as radius, location, use, or exclusivity provision *in any other lease, financing agreement* or *master agreement* or *master agreement relating* to such shopping center;" (Emphasis added).

"The language of Clause (c) refers to non-substantial breaches *in other leases* or agreements relating to the shopping center as distinguished from provisions contained in the lease which is itself to be assigned." *D. Simpson, Leases and the Bankruptcy Code,* 56 Am.Bankr.L.J. 233, 243 (1982). By omitting the lease in question and referring only to other leases, the subsection does not require a showing that assignment will not breach the lease to be assigned, thus tacitly acknowledging that a measure of change in the contractual obligations is permissible. *Id.* at 243. Although this subsection does not require strict performance of the debtor's lease obligations by the assignee,[2] the Court cannot rewrite the lease. The variance in the nature of the business must not jeopardize the landlord's relationship with his other tenants, lending institutions, and agents. Therefore under this former subsection, it is not appropriate for the Court to question whether the proposed use violates the use

---

**2.** The recent amendment to § 365(b)(3)(C) by The Bankruptcy Amendments and Federal Judgeship Act of 1984 require strict adherence to use clauses. Assignment is subject to all use and exclusivity provisions in the particular lease

to be assigned. 11 U.S.C. § 365(b)(3)(C) (1984). The addition lends further support to the interpretation that the previous version did not require strict adherence to use provisions.

provisions of the lease to be assigned, but rather question whether the change substantially breaches other agreements relating to the shopping center. In this case the debtor is not prohibited from assigning despite the deviation in use because it was not shown that the assignment will substantially breach a provision in any other agreement concerning the shopping center.

Even if former sub-section (C) could be construed to mean the assignment must be denied in the absence of compliance with all restrictive provisions of the particular lease to be assigned, the proposed use by Leather Warehouse will not substantially breach the two use provisions of this lease. The landlord argues that the proposed assignee must not sell clothing, which is prohibited under paragraph K. However, a review of the entire clause indicates that the prohibition is intended to prevent sale of children's clothes normally sold by the landlord which are not sold by Leather Warehouse. Secondly, the restrictive use clause which requires the tenant to sell only electronics is unenforceable as it is purely an attempt to preclude assignment by the original tenant. *See In re Vista, Vi, Inc.,* 35 B.R. 564, 568 (Bankr.N.D.Ohio 1983). Rather, the issue of whether the two use clauses should prevent assignment to this proposed assignee is relevant to the question of whether the assignment will disrupt substantially any tenant mix or balance in the shopping center. 11 U.S.C. 365(B)(3)(D).

The prohibition against substantial disruption of tenant mix "... certainly implies that there is inherent authority in the Bankruptcy Court to authorize deviation in the use of shopping center premises from that permitted by the express terms of the lease itself. If the debtor assuming a lease were restricted merely to continuing its business as therefore conducted, the issue of disruption in the tenant mix or balance would not arise and the necessity for the statutory condition would be superfluous." *Leases Under The Bankruptcy Code, supra* at 243. Where the proposed use varies the nature of the business in technical violation of a restrictive use clause, but does not harm the overall image of the shopping center

and does not jeopardize the landlord's bargain, a deviation in the tenant mix is permissible. *Vista Vi, Inc.,* 35 B.R. 564 (Bankr.N.D.Ohio, 1983) (debtor permitted to change name of store even though shopping center lease required it to operate under particular name); *Matter of Libson Shops, Inc.,* 24 B.R. 693 (Bankr.E.D.Mo. 1982) (debtor permitted to conduct going out of business sale despite prohibition of same in shopping center lease). This interpretation is supported by the legislative history to former 365: "use clauses are not intended to prevent assignment of leases". S.Report No. 70, 98th Cong. 1st Sess. 1 (119) *quoted* in *In re Vista Vi, Inc.,* 35 B.R. 564, at 56 (Bankr.N.D.Ohio 1983).

■ In the present case, the proposed use for retail of leather goods does not substantially disrupt the balance of the shopping center. The photographs introduced into evidence show that the center is a small five store shopping center, comprised of the landlord's toy store, a ladies' dress store, a bank, a shoe store, and the closed stereo electronics store of the debtor. Replacement of the debtor's operation with The Leather Warehouse does not force any of the tenants to compete with each other. Thus, the present case is distinguishable from *In re TSW Stores of Nanuet, Inc.,* 34 B.R. 299 (Bankr.S.D.N.Y. 1983) where assignment was denied because the proposed assignee sold the same goods as another tenant. Here, no other store in the shopping center sells inventory similar to that of Leather Warehouse. There was no evidence presented that the change in use will prejudice other tenants by causing losses in sales.

For these reasons, I find that the assignee has provided adequate assurance of future performance within the meaning of § 365(b)(3)(A), (B), (C), and (D). The debtor concedes that it is required to cure all defaults in the lease before assumption and assignment, *see* 11 U.C.C. § 365(b)(1)(A) (1979), and has expressed its willingness to so do.

■ The landlord claims $91 per day in accrued rent. The debtor does not dispute

this figure. The debtor has not paid rent since April 1, 1984, and therefore the landlord is entitled to payment through the date of this memorandum (May 29, 1985) in the amount of $30,100. In addition to base rent, the landlord claims interest on late rent, pursuant to section 4(C) as the term is defined in § 37 of the lease. The debtor does not express an opinion on the issue of interest. Since interest is a component of the rent reserved in the lease, it is allowable unless the debtor produces evidence that it is unreasonable. *See In re GHR Energy Corp.*, 41 B.R. 668 (Bankr.D.Mass. 1984). The landlord's claim for interest is allowed in the amount of $1899.

Finally, the landlord claims it is entitled to reimbursement of attorneys fees and expenses, for which § 25(B)(ii) permits recovery. Where a contract between a debtor and a third party provides for award of attorneys' fees, the Court is obligated to determine the reasonable value of the services by examining the nature and extent of services rendered. *See In re Edsel Scarboro*, 8 B.C.D. 72 (Bankr.D.Md.1981). After reviewing the statement of work performed, it is my conclusion that the amount sought by the landlord is unreasonable. First, the time spent on formulating, drafting, and the one hour trial of its objection to assignment of the lease—forty-three hours—is excessive. Second, the attachments disclose that much time was spent on routine matters such as "telephone calls" and "document review". The hourly rate charged by the attorneys is not stated in the request. My calculation results in a requested hourly rate of approximately $175. Neither attorney attached a resume of his experience and qualifications. The requested hourly rate is, in my view, is unreasonable. I have determined that a reasonable fee for the services rendered is $3500.

The landlord requests reimbursement of $405 in expenses incurred in conjunction with legal services. The request for $100 fee for word processing is denied as this constitutes overhead of the attorneys office. The request for reimbursement for "xerox, telephone, misc." is denied as it is merely an estimated charge,

and no detail is provided. Expenses are allowed in the amount of $205. It is ordered that the debtor cure all of the above-discussed defaults in the amount of $35,704 prior to the assignment of the lease.