In re The CASUAL MALE CORPORATION, The Casual Male, Inc., Himalaya Sportswear, Inc., Sweats FX, Inc., TCM Apparel, Inc., Debtors.

Bankruptcy Nos. 90–40492–JFQ through 90–40496–JFQ.

United States Bankruptcy Court, D. Massachusetts.

Oct. 3, 1990.

J. Robert Seder, Seder & Chandler, Worcester, Mass., for debtor.

George Kelakos, Cohn, Roitman & Kelakos, Boston, Mass., for Evergreen Plaza Associates.

Carl Aframe, Worcester, Mass., for MY, Inc.

## OPINION

JAMES F. QUEENAN, Bankruptcy Judge.

On August 28, 1990, the consolidated Debtors filed a motion to assume and assign to MY, Inc. ("MY") a ten year lease executed in June of 1989 by the Debtor Sweats FX, Inc. as lessee with Evergreen Plaza Associates ("Evergreen") as lessor and covering premises at Evergreen Plaza Shopping Center in Evergreen Park, Illinois. Evergreen opposes the motion on the ground that it was not filed within the period specified in 11 U.S.C.S. § 365(d)(4) (Law.Co-op.1985), as extended by this court's order of June 4, 1990. Presented is the question of what action is necessary for a debtor to "assume" a lease in a timely manner under § 365(d)(4), as well as the question of whether the Debtors are entitled to relief from the court's order of June 4th which required that a motion to assume be filed by August 17, 1990. Evergreen also contends that the financial condition of MY does not provide the "adequate assurance" required by § 365(b)(3).

## I. FACTS

The Debtors filed their chapter 11 petitions on April 4, 1990. Prior to the filing, they operated several hundred men's clothing stores under various trade names, principally "Big and Tall" and "Casual Male." Their business plan is based on the continuance of only "Big & Tall" stores. Not having used the Evergreen Plaza premises for such a store, the Debtors wish to sell the lease. They initially planned to include it in an auction of their unneeded leases scheduled for July 31, 1990. With the sixty day period for assumption or rejection of leases about to expire on June 4, 1990, the Debtors filed a motion to extend the time for assumption or rejection to August 17, 1990. More specifically, they requested in that motion an order "allowing the Debtors until August 17, 1990 to file its [sic] motions to assume, reject or assume and assign" the lease. On June 4th, the court entered an order which simply "ALLOWED" this request.

The auction of leases took place in New York City on July 31, 1990. Among the attendees were the Debtors' lawyer, John L. Pfeffer, Jr., and representatives of the landlord, Evergreen, in the persons of its general manager, Vincent Gavin, and its attorney, Dean Parker. Also attending were Michael York, the president of MY, and Paul Gilleran, MY's attorney. Immediately prior to the auction, the MY representatives met with the Debtors' attorney and orally offered to purchase three leases, including the Evergreen Plaza lease, for a total price of $90,000, of which $58,500 was allocated to the Evergreen Plaza lease. Attorney Pfeffer accepted the offer, subject to court approval. He informed the auctioneer of the agreement and of the withdrawal of the three leases from the auction. Consequently, at the beginning of the auction the auctioneer permitted Attorney Gilleran to announce the terms of the transaction; the auctioneer then informed all attending that the three leases were withdrawn. The Evergreen representatives, who witnessed this, met with MY's representatives while the auction proceeded. They told Messrs. York and Gilleran that Evergreen would deal with the pro-

posed assignment in the same manner as a lease assignment outside of the bankruptcy context.

On that same day, July 31st, Attorney Parker wrote via facsimile to Attorney Gilleran affirming Evergreen's willingness to consider the assignment and requesting detailed financial and background information on MY and its president, Michael York. On August 6th, Attorney Gilleran requested of Attorney Parker drawings of the lease premises for use by MY's architect. Evergreen furnished these the next day. On August 7th, Evergreen's controller informed the Debtors' lawyer that Evergreen wished to make a sales audit as provided in the lease, requesting that the Debtors have certain business records available for the auditor. The audit was in fact performed during the week of August 27th. On August 27th, Attorney Gilleran wrote to Attorney Parker giving him financial and background information on MY, citing vacation and travel commitments of various parties as the reason for his delay in furnishing the information.

MY was also a bit slow in completing and signing the final draft of the agreement for assignment of the three leases. Although on August 8th Attorneys Gilleran and Pfeffer had reviewed and revised an initial draft prepared by Attorney Gilleran, it was not until August 25th that MY completed and signed the final version. The agreement was received by the Debtors on August 28th and immediately signed by them. On that same day, the Debtors filed their motion to assume and assign the lease, which was given a hearing date of September 4th.

Attorney Pfeffer had previously filed, on August 15th, a motion to assume and assign a number of other leases; this motion was also set down for a September 4th hearing date. Attorney Pfeffer did not include the Evergreen lease in the earlier motion under the belief that a timely assumption had already occurred. Although the Evergreen lease was not included in the August 15th filing, Evergreen's local counsel was among those whom the Debtors' attorneys notified on August 15th of the September 4th hearing date. Evergreen's Chicago counsel, Attorney Parker, wrote to Attorney Pfeffer on August 27th urging cooperation with Evergreen's auditor and stating in part: "I also understand that a hearing date has been set for assignment of the lease on September 4, 1990. It will be next to impossible for the landlord to consent to the proposed assignment without adequate verification of sales."

At the hearing on September 4th, Evergreen objected on two grounds to the motion to assume and assign: that it was filed after the August 17th date specified in the order of June 4th, and that MY did not have the financial qualifications required of assignees of shopping center leases under § 365(b)(3). A higher bid having been received for the Evergreen Plaza lease shortly before the hearing date, I first held a sealed bid auction, which resulted in MY becoming the winning bidder at a price of $100,600. I then heard evidence on MY's financial qualifications, and took the matter under advisement. On September 7th, I issued an order finding MY to be a qualified assignee but denying the motion because it had not been timely filed.

The Debtors thereafter moved for reconsideration. At the conclusion of a telephonic hearing on the motion held on September 17th, I vacated the prior order and approved assumption and assignment of the lease.

The foregoing are my principal findings of fact in support of the September 17th order. I now turn to the legal issues.

II. DID THE DEBTORS "ASSUME" THE EVERGREEN PLAZA LEASE, WITHIN THE MEANING OF SECTION 365(d)(4), BY THEIR ACTS PRIOR TO AUGUST 17TH SHOWING THEIR INTENTION AND AGREEMENT TO ASSUME?

■ In their conduct prior to August 17th, the Debtors unquestionably demonstrated to Evergreen their intention and agreement to assume and assign the lease, subject to court approval. After coming to agreement with MY prior to the auction on July 31st, the Debtors immediately in-

formed Evergreen of the agreement. This was done in rather formal and public fashion through announcement of the agreement at the public auction attended by Evergreen. MY then orally confirmed the agreement to Evergreen. Evergreen's facsimile transmission of July 31st shows that it had no doubts concerning the existence of the assignment agreement. The communications of August 7th and 8th between MY and Evergreen on layout plans are to the same effect.

■ Section 365(d)(4), quoted below,[1] requires that a debtor[2] "assume" an unexpired lease of nonresidential real property within sixty days of the order of relief, or within the period of any extension granted by the court. Neither the statute nor its legislative history sheds light on what action a debtor must take in order to "assume". We can be confident, however, that court approval is not the equivalent of the debtor's action to "assume". Section 365(a) provides that: "[T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." Assumption is obviously action separate from the court order. The words "subject to" and "approval" connote action which precedes the court order; otherwise, words of prior authorization would have been used. The divided case law discussed below is in agreement that the debtor's action to assume, and not

the court order, need take place within the initial or extended period.[3] The disharmony lies in what form of conduct qualifies as a debtor's action to assume within the initial period. Evergreen says that it is the motion to assume which must be timely filed under subsection (d)(4). But this makes nonsense of another part of the statute. As noted earlier, the word "assume" appears in § 365(a) as well, with presumably the same meaning. If "assume" means the filing of a motion to assume, then § 365(a) would, in effect, read as follows: The trustee, subject to the court's approval, may *file a motion to* assume or reject any executory contract or unexpired lease of the debtor. Requiring court approval of the filing of a motion is silly. Nothing in subsection (d)(4) forces such a torturing of the statute.

Equating "assume" in subsection (d)(4) to the filing of a motion to assume is also inconsistent with case law which formed the background to enactment of the subsection. Subsection (d)(4) was enacted as an amendment in 1984 as the result of dissatisfaction on the part of nonresidential landlords with the unlimited time in which a chapter 11 debtor was permitted to assume or reject absent a special court order. 130 Cong.Rec. S8894–95 (daily ed. June 29, 1984) (remarks of Senator Hatch). Subsection (d)(1),[4] which is applicable to chapter 7

---

1. Section 365(d)(4) provides:
 (4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall *immediately* surrender such nonresidential real property to the lessor.

2. In a chapter 11 case, of course, a debtor in possession has the assumption powers of a trustee. 11 U.S.C. § 1107.

3. The early decisions interpreting 365(d)(4) required that the debtor obtain a court order of approval within the sixty day period. *In re Southwest Aircraft Services, Inc.,* 53 B.R. 805 (Bankr.C.D.Cal.1985), *rev'd,* 66 B.R. 121 (9th Cir. B.A.P.1986); *In re By–Rite Distributing, Inc.,* 47 B.R. 660 (Bankr.D.Utah) *rev'd,* 55 B.R. 740

(D.Utah 1985); *In re House of Deals of Broward, Inc.,* 67 B.R. 23, 24 (Bankr.E.D.N.Y.1986); *In re House of Emeralds,* 57 B.R. 31 (Bankr.D.Hawaii 1985). As noted, the first two decisions were reversed. The latter two decisions were subsequently overruled. *See Tigr Restaurant, Inc. v. Rouse S.I. Shopping Center, Inc.,* 79 B.R. 954 (E.D.N.Y.1987); *In re Diamond Head Emporium, Inc.,* 79 B.R. 487, 492–93 (Bankr.D.Hawaii 1981) (In light of *By–Rite* decision Judge Chinen did not follow his decision in *House of Emeralds.*).

4. Subsection 365(d)(1) provides:
 (d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60 day period, fixes, then such contract or lease is deemed rejected.

cases, has been in the statute from the beginning. Its language, identical to that of subsection (d)(4) for our purposes, had been interpreted to permit a chapter 7 trustee to assume within the sixty day period through action short of filing a motion to assume. *E.g., In re Ro–An Food Enterprises, Ltd.,* 41 B.R. 416 (E.D.N.Y.1984) (statements by trustee at § 362 hearing that sale of lease is scheduled deemed sufficient); *In re Avery Arnold Constr., Inc.,* 11 B.R. 34 (Bankr.S.D.Fla.1981) (statement by trustee's attorney to landlord that trustee intended to assign constituted timely assumption). A rule of common law is presumed to be incorporated in a statute unless expressly repudiated. *Kelly v. Robinson,* 479 U.S. 36, 47, 107 S.Ct. 353, 359, 93 L.Ed.2d 216 (1986); *Midlantic National Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 500–01, 106 S.Ct. 755, 758–60, 88 L.Ed.2d 859 (1986). This principle applies with even greater force when the case law is an interpretation of essentially identical statutory language.

■ I therefore agree with those courts that see no command in subsection (d)(4) that a motion is to be filed within the prescribed period, and require only timely and unequivocal statements to the lessor of intention to assume. *See In re By–Rite Distributing, Inc.,* 55 B.R. 740, 742 (D.Utah 1985) (trustee assumes lease "when he makes up his mind to do so and communicates his decision in an appropriate manner, such as by filing a motion to assume"); *In re Re–Trac Corp.,* 59 B.R. 251 (Bankr.D.Minn.1986) (unequivocal statement of intent made within 60 days sufficient, but vague statement of intention to continue operations at leased premises not enough); *In re Bon Ton Restaurant & Pastry Shop, Inc.,* 52 B.R. 850 (Bankr.N.D. Ill.1985) (timely manifestation of decision to assume or reject necessary; filing of motion deemed sufficient). Where the debtor does not occupy the leased premises, the same logic dictates denial of the accrual of administrative rent after notice of rejection, even though there is no concurrent filing of a motion to reject. *See In re Mid Region Petroleum, Inc.,* 111 B.R.

968 (Bankr.N.D.Okl.1990) (written notice of rejection); *In re 1 Potato 2, Inc.,* 58 B.R. 752 (Bankr.D.Minn.1986) (same).

Ignoring these considerations, other decisions require that a motion to assume be filed within the sixty day period or any extension thereof. One rationale of this case law is that a contrary rule leads to the "morass" that existed under the prior Act, which did not expressly require court approval and under which courts were called upon to determine whether particular conduct of the debtor or trustee constituted an assumption binding upon the estate. *See, e.g., In re Treat Fitness Center, Inc.,* 60 B.R. 878, 879 (9th Cir.B.A.P.1986); *In re A.H. Robins Co.,* 68 B.R. 705, 709 (Bankr. E.D.Va.1986). I find this reasoning unpersuasive. It is certainly true that the situation under the prior Act was undesirable because a debtor or trustee could burden the estate with an onerous contract without creditors having the protection of court approval. *See, e.g., In re Steelship Corp.,* 576 F.2d 128, 132 (8th Cir.1978) (trustee's sale to party produced by broker before petition filing deemed binding assumption of broker's fee agreement); *Brown v. Presbyterian Ministers Fund,* 484 F.2d 998, 1007 (3d Cir.1973) (informal assumption of mortgage reduction agreement deemed sufficient); *Nostromo, Inc. v. Fahrenkrog,* 388 F.2d 82 (8th Cir.1968) (trustee's oral notice of intention to proceed with real estate purchase held binding upon estate). *Compare, e.g., Local Joint Executive Bd., etc. v. Hotel Circle, Inc.,* 613 F.2d 210 (9th Cir.1980) (court order necessary for binding assumption, otherwise court is presented with *fait accomplis*); *Texas Importing Co. v. Banco Popular de Puerto Rico,* 360 F.2d 582 (5th Cir.1966) (same). Section 365, however, has cured this problem by requiring court approval. No longer is it possible for a court to be foreclosed from determining whether assumption is beneficial to the estate. Thus, the only question under the statute now is whether there has been timely action that can lead to court approval. This presents no "morass." Indeed, courts which look favorably upon timely informal action under the statute

have been quite firm in requiring that the action be unequivocal. *E.g., In re Re–Trac Corp.*, 59 B.R. 251 (Bankr.D.Minn.1986).

Giving effect to a debtor's statements of intention to assume does not foster the state of suspended uncertainty on the part of lessors which subsection (d)(4) was intended to eliminate. To the contrary, such statements resolve uncertainty about assumption as much as would a motion filing. The lessor thereby knows that a commitment will be made to honor the lease obligations, either by the debtor or by an assignee. Moreover, the lessor need no longer be uncertain about whether the debtor must pay the full rent pending assumption or rejection. The 1984 amendments to § 365 also inserted subsection (d)(3) requiring the debtor or trustee to remain current in rent payments. This ended the ability of the estate representative to contend that only fair rental value is due and perhaps delay all payments. Here, the Debtors accordingly remained current on rent. There is, in any event, some uncertainty even after the motion is filed, until the court grants its approval. If there is any delay in the filing of the motion, the lessor can quickly end it by obtaining an order requiring prompt filing; unlike the pre–1984 situation, such a motion would involve only debtors who intend to assume and who would therefore have no objection to the motion.

The decisions requiring motion filing within the statutory period also find support in Bankruptcy Rule 6006 [5] (or its predecessor B.R. 606) governing the procedure for a motion to assume. *See, e.g., In re Treat Fitness Center, Inc.*, 60 B.R. 878 (9th Cir.B.A.P.1986); *In re Swiss Hot Dog Co.*, 72 B.R. 569 (D.Colo.1987); *In re BDM Corp.*, 71 B.R. 142 (N.D.Ill.1987). B.R. 6006, however, in no way purports to require motion filing as the timely action necessary under subsection (d)(4). Even if it did, its provisions could not change a substantive right granted by the statute. 28 U.S.C.S. § 2075 (Law.Co-op.1987); *In re Klein*, 110 B.R. 862, 870 (Bankr.N.D.Ill. 1990). B.R. 6006 merely sets forth the procedure that must be taken to obtain the court approval which the statute requires in order for an assumption to be binding upon the estate.

## III. ARE THE DEBTORS ENTITLED TO RELIEF FROM THE JUNE 4TH ORDER?

The fact remains that the June 4th order required the Debtors to file their motion by August 17th, which they failed to do. That is the clear import of the "ALLOWANCE" of the motion, which requested an order "allowing the Debtors until August 17, 1990 to file its [sic] motion to assume, reject or assume and assign" the lease. The order and motion were both drawn by Debtors' counsel.

 Under Fed.R.Civ.P. 60(b),[6] as incorporated by B.R. 9024, a party may ob-

---

**5.** B.R. 6006 provides:

(a) **Proceeding to Assume, Reject, or Assign.** A proceeding to assume, reject, or assign an executory contract, unexpired lease, or time share interest, other than as part of a plan, is governed by Rule 9014.

(b) **Proceeding to Require Trustee to Act.** A proceeding by a party to an executory contract, unexpired lease, or time share interest in a chapter 9 municipality case, chapter 11 reorganization case, or chapter 13 individual's debt adjustment case, to require the trustee, debtor in possession, or debtor to determine whether to assume or reject the contract, lease, or time share interest is governed by Rule 9014.

(c) **Hearing.** When a motion is made pursuant to subdivision (a) or (b) of this rule, the court shall set a hearing on notice to the other party to the contract and to other parties in interest as the court may direct.

**6.** Fed.R.Civ.P. 60(b) provides in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

tain relief from an order or judgment on various grounds, including mistake, inadvertence, excusable neglect or "any other reason justifying relief...." Even if such grounds are present, however, I cannot now grant relief in the form of a further extension of the time in which the Debtors may assume the lease. Section 365(d)(4) prohibits retroactive extension. It permits extension of the initial sixty day period "for such additional time as the court, for cause, *within such 60 day period,* fixes...." (emphasis added). Clearly, in making the initial extension the court must act within the sixty days. *Tigr Restaurant v. Rouse S.I. Shopping Center,* 79 B.R. 954, 955–56 (E.D.N.Y.1987). Additional extensions are presumably permitted, and indeed I have done so in this case with respect to other leases. Successive extensions are not uncommon in cases such as this involving numerous leases. *E.g., In re American Healthcare Management, Inc.,* 900 F.2d 827, 829–30 (5th Cir.1990) (statute interpreted to permit successive extensions); *In re Victoria Station, Inc.,* 875 F.2d 1380, 1385 (9th Cir.1989) (same). The second extension should nevertheless not be granted after expiration of the first extension period, in light of the statute's mandate that an initial extension be approved only within the first sixty days.

█ It is unnecessary, however, to grant the Debtors Rule 60(b) relief in the form of a retroactive extension of time within which to file their motion. In light of my conclusion that the Debtors have acted timely under the statute, they will obtain sufficient relief if the order is amended to require that by August 17, 1990 they "assume" the lease within the meaning of § 365(d)(4).

I conclude that the order should be so amended because of the mistake and inadvertence of Debtors' counsel in requesting an order requiring the Debtors to file a motion by August 17th rather than to take action necessary to "assume" by that date. I am convinced by counsel's statements at the hearing that he intended to take full advantage of the statute and not limit his options under it. Because a motion to as-

sume is obviously necessary at some early stage, he mistakenly confused this procedural step with what must be done within the statute's time frame. His mistake was inadvertent rather than a deliberate strategic choice.

Debtors' counsel later compounded this mistake. In August, forgetting what was required under the June 4th order, he acted in the conviction that the Debtors had already taken the necessary action to assume the lease. The correctness of this belief may have been encouraged by an unrelated ruling of mine. On August 17th, I ruled that the Debtors had rejected another lease and thereby ended the accrual of an administrative rent claim under that lease by giving the lessor notice of rejection. To the extent that the Debtors' failure to file a motion to assume by August 17th consisted of neglect rather than mistake, that neglect was excusable neglect within the meaning of Rule 60(b).

The entire surrounding circumstances support a liberal application of Rule 60(b)(1). The complexity of this case entitles the Debtors to an order granting them full assumption rights during the extended period, so that the Debtors would prevail on the merits under subsection (d)(3). Nor are there any policy considerations favoring the end of litigation; Evergreen did not contest the June 4th order. Neither did it take action in reliance on the order, other than its counsel's preparation of his case a few days before the September 4th hearing. The August 27th letter of Evergreen's counsel, moreover, shows that until then Evergreen believed the Debtors to be entitled to make the assignment unless MY was financially unqualified. These circumstances, coupled with the actual filing of the motion on August 28th, show minimal prejudice to MY. Such considerations favor the granting of Rule 60(b)(1) relief. *Randall v. Merrill Lynch,* 820 F.2d 1317 (D.C.Cir.1987) (attack of acute anxiety disorder prompting voluntary dismissal); *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.,* 843 F.2d 808 (4th Cir.1988) (default judgment through attorney negligence, coupled with early motion filing and apparently meritori-

ous defense); *INVEST Financial Group, Inc. v. Chem–Nuclear Systems, Inc.*, 815 F.2d 391 (6th Cir.1987) (default caused by ambiguous revocation of agreement to extend time for answer filing, no action of reliance by plaintiff); *In re CADA Investments, Inc.*, 664 F.2d 1158 (9th Cir.1981) (bankruptcy court order confirming sale set aside due to higher offer from party who attempted but failed to communicate offer to receiver); *Denman v. Shubow*, 413 F.2d 258 (1st Cir.1969) (dismissal for plaintiff's failure to attend trial assignment session after oversleeping, no prejudice to defendant); *Tolson v. Hodge*, 411 F.2d 123 (4th Cir.1969) (default caused by short delay of attorney in asking for extension to file answer, apparently meritorious defense); *Schwab v. Bullock's, Inc.*, 508 F.2d 353 (9th Cir.1974) (default, no prejudice and meritorious defense). *See also* Hendel, *The Doctrine of Excusable Neglect: The Search for Absolution from Error*, Com. L.J. (April 1983).

■ The June 4th order may also be amended under Rule 60(b)(6) which permits relief for "any other reason justifying relief from the operation of the judgment." The amendment takes from Evergreen no right given it by statute. To the contrary, it reinstates Evergreen's statutory right that the Debtors "assume" the lease within the statutory period. Equally important, the general equities tip greatly in favor of granting the Debtors relief. The situation went far beyond Evergreen placing no re-

liance upon the wording of the June 4th order. Evergreen's letter of August 27th and its audit conducted that week led the Debtors to believe that the only issue was MY's financial qualifications. The Debtors argue that by this conduct Evergreen should be equitably estopped from complaining of the date of filing. If Evergreen's conduct does not justify application of equitable estoppel, the equities here are certainly similar to those supporting that doctrine. *See* 28 AM.JUR.2d, §§ 26–31.

## IV. IS MY A FINANCIALLY QUALIFIED ASSIGNEE?

■ Evergreen contends that the proposed assignment does not give it the adequate assurance required by § 365(b)(3).[7] MY offered to deposit six months rent in advance or deliver an irrevocable letter of credit in that amount. Evergreen stresses, however, that MY is a new corporation without operating history, and that except for a $1000 capital contribution the source of MY's working capital is a loan from its principal, Michael York. Section 365(b)(3)(A) requires that "the financial condition and operating performance" of MY "be similar" to that of the Debtors at the time the lease was executed. Because the statute's prime purpose is to provide adequate assurance for the payment of future rent, I interpret this to mean that the financial condition and operating performance of MY must be at least as strong as was the Debtors' in June of 1989.[8]

---

7. Section 365(b)(3) states:
 (3) For the purposes of paragraph (1) of this section and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—
 (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
 (B) that any percentage rent due under such lease will not decline substantially;
 (C) that assumption or assignment of such lease is subject to all the provisions thereof,

including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
 (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

8. In 1984 Congress amended § 365(b)(3) primarily to stop the assumption and assignment of shopping center leases which would violate the use clause of the lease and disrupt the tenant mix. 130 Cong.Rec. S8895 (daily ed. June 29, 1984) (statement of Sen. Hatch) *reprinted in* App. 3 *Collier on Bankruptcy* XX–71 (15th ed. 1989). To further protect shopping centers, Congress also amended § 365(b)(3)(A) to require the debtor to provide adequate assurance

MY qualifies under the statute. Because MY was recently incorporated, any judgment concerning the strength of its operating performance necessarily depends upon the business experience of York, its sole owner and chief executive officer. He has extensive experience in the retail clothing field and is well qualified to conduct the proposed retail operations which he detailed at the September 4th hearing. His successful experience demonstrates far more strength in operations than that exhibited by the Debtors in June of 1989, when they were suffering large losses. The Debtors had an operating loss of $3,557,432 during the six months ending July 29, 1989. MY's balance sheet also shows more strength than did the Debtors' at the time of the lease's execution. As disclosed in the Form 10–Q filed by the Debtors with the Securities and Exchange Commission, the July 29, 1989 consolidated balance sheet of the Debtors shows a ratio of current assets to current liabilities of less than 1.2 to 1. MY, on the other hand, has $300,000 in cash and virtually no current liabilities, a ratio of almost 300 to 0. MY's entire loan indebtedness to York is long term debt whose principal payments will not commence until August 31, 1995.

## V. CONCLUSION

A separate order has issued today amending the order of June 4, 1990 so as to require that the Debtors assume the lease not later than August 17, 1990. The Debtors already having done so, the assumption and assignment to MY is approved, as set forth in the order of September 17, 1990.

---

that an assignee has a financial condition and operating performance similar to that of the original tenant when the lease was executed. *See* 11 U.S.C. § 365(b)(3)(A). The legislative history indicates that the purpose of this language was "to insure that the assignee itself will not soon go into bankruptcy and will provide operating and advertising benefits to the other tenants similar to those provided by the original tenant when its lease was executed." 130 Cong. Rec. S889 *reprinted in* App. 3 *Collier on Bankruptcy* XX–71 (15th ed.1989). Other than this scant history, Congress does not enlighten us on how to interpret or apply subsection (b)(3)(A). Research indicates that the amended § 365(b)(3)(A) has yet to be interpreted by the courts. The few cases that have interpreted the prior language of § 365(b)(3)(A) and its general mandate requiring adequate assurance of future payments have focused solely on whether the assignee had the ability to satisfy the financial obligations imposed by the lease. *See In re Tech HIFI, Inc.,* 49 B.R. 876, 879 (Bankr.D.Mass. 1985); *In re Evelyn Byrnes, Inc.,* 32 B.R. 825 (Bankr.S.D.N.Y.1983); *In re Brentano's, Inc.,* 29 B.R. 881, 883 (Bankr.S.D.N.Y.1983).