**In re THINKING MACHINES CORPORATION, Debtor-in-possession.**

**Civ. A. No. 95–10394–WGY.**

United States District Court,
D. Massachusetts.

May 17, 1995.

---

Charles R. Dougherty, Hill & Barlow, Boston, MA, for Thinking Machines Corp.

Charles R. Bennett, Jr., Riemer & Braunstein, Boston, MA, for Mellon Financial Corp.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

This appeal of a decision and judgment of the Bankruptcy Court involves a single narrow issue hotly contested and frequently litigated—with contradictory results—across the country. The question is whether, under the Bankruptcy Code (the "Code"), the rejection of a commercial lease by the bankruptcy trustee or the debtor-in-possession is effective at once upon an unequivocal act of rejection by the trustee or debtor-in-possession or later upon court approval of the rejection. As a debtor must continue to honor its obligations under the lease until rejection occurs, the effective date of rejection has great practical importance where, as here, the fair market value of the rental property is far below the lease rate. The debtor, Thinking Machines Corp. ("Thinking Machines"), asserts that the plain language of the Code and general bankruptcy policy require that rejection be effective upon its expression thereof and the filing of its motion for court approval; its lessor, Mellon Financial Corporation # 1 ("Mellon" or "the lessor"), insists that those same factors compel the conclusion that rejection occurs upon—and dates from—Bankruptcy Court approval of the motion. The Bankruptcy Court held for the lessor, and Thinking Machines appealed.

### I. Background

In April of 1990, Thinking Machines entered into a long-term lease with Mellon for space in a Cambridge office building. As time passed, Thinking Machines' financial situation deteriorated, and the company filed a voluntary bankruptcy petition under Chapter 11 on August 17, 1994, continuing to operate as a debtor-in-possession. At the time of filing, Thinking Machines was leasing more space from Mellon than it needed, and the rental value of the property had dropped appreciably. As was its right as a debtor-in-possession, Thinking Machines sought to rid itself of an undesirable asset, its leasehold, and to that end filed with the Bankruptcy Court on September 13, 1994 a motion for approval of its rejection of the unexpired lease ("the motion"). The Bankruptcy Court granted the motion on October 4, 1994.

Mellon then filed a motion to compel, demanding that Thinking Machines pay, as an administrative expense, the lease-rate of rent and certain real estate taxes through October 4, 1994, the date of approval, in the amount of $345,915.89. Thinking Machines contended that the lease was rejected on the day it filed the motion, September 13, 1994, and argued that it only owed rent up until that date. In late October, Thinking Machines paid Mellon's administrative rent claim through September 13 in the amount of $143,326.45. On December 21, 1994, the Bankruptcy Court issued its decision in favor of Mellon (the "Decision"), holding that Thinking Machines did not effectively reject the lease until it obtained approval from the court and that Mellon was thus entitled to collect rent up until October 4, 1994. *See In re Thinking Machines Corp.*, 178 B.R. 31 (Bankr.D.Mass.1994). At Mellon's request, the Bankruptcy Court entered judgment in its favor on January 23, 1995, in the amount of the balance due, $210,150.26, plus interest (the "Judgment"). Thinking Machines now appeals the Decision and Judgment pursuant to 28 U.S.C.A. § 158(a) (West 1993).

### II. Discussion

#### A. Standard of Review

The issue presented in this case is bereft of factual dispute and is purely a question of law which the Court reviews *de novo*. *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir.1994).

#### B. The Bankruptcy Code

The key Code provision at issue states that, with exceptions not here relevant, "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C.A. § 365(a) (West 1993). A debtor-in-possession may exercise all the powers of a trustee

under section 365. *See id.* § 1107(a). Section 365 states further:

> The trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected.... [I]f the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief ... then such lease is deemed rejected ...

*Id.* ¶¶ 365(d)(3), (4). The date of the "order for relief" is the date upon which the debtor files a petition for relief. *See id.* § 301.

### C. Analysis

■ Section 365(a) has been a frequent subject of litigation, primarily in Bankruptcy Courts, over the past few years. Several courts have deemed its language plain, but disagree markedly over what result is compelled by the supposedly "plain language."[1] In this case, the Bankruptcy Court found neither Thinking Machines' nor Mellon's view clearly expressed in the statute. *In re Thinking Machines,* 178 B.R. 31, 33 (Bankr. D.Mass.1994). Rather, the Bankruptcy Court held that the "better reasoned argument" was that two acts, one by the debtor-in-possession and the other by the court, are necessary, "together constituting rejection, with the court order, the last to occur, controlling the effective date." *Id.* The court supported its holding by reference to a particular policy consideration: the need for factual certainty as to the date of rejection so that a lessor would not be caught in the unenviable position of being unable to collect rent or to relet the premises until court approval was obtained. The court was concerned that the possibility that such approval might not be forthcoming would prevent the lessor from gaining possession of the property and taking steps to locate a new tenant. *Id.* at 33–34.

While this Court agrees that the language of the statute is not "plain" in the sense of admitting of but one reasonable interpretation, it must respectfully disagree with the Bankruptcy Court's holding that the better reading of section 365(a) delays the effective date of rejection until court approval. The statute does in fact contemplate a two-step procedure, but those steps are "assumption" or "rejection" (by the debtor-in-possession) and "approval" (by the Bankruptcy Court), and not "motion for approval" and "rejection" or "assumption." *See In re Casual Male Corp.,* 120 B.R. 256, 260 (Bankr.D.Mass.1990) (Queenan, J.); *In re By–Rite Distrib., Inc.,* 55 B.R. 740, 742 (D.Utah 1985). The Congress did not say "with the approval of," or similar language indicating a joint enterprise culminating in rejection or assumption; examples abound of such restrictions. *See, e.g.,* U.S. CONST. art. 2, § 2, cl. 2 (power of president to make treaties and appoint officers of the United States "with the advice and consent of the Senate").

In the analogous context of lease assumption, Judge Queenan of the Bankruptcy Court in this district stated:

> We can be confident, however, that court approval is not the equivalent of the debtor's action to "assume".... Assumption is obviously action separate from the court order. The words "subject to" and "approval" connote action which precedes the court order; otherwise, words of prior authorization would have been used.

*Casual Male,* 120 B.R. at 260. The same reasoning applies with equal force to lease rejections. *See also In re Joseph C. Spiess Co.,* 145 B.R. 597, 600 (Bankr.N.D.Ill.1992) ("neither the plain language of or past practice under Section 365[d], nor the policy underlying payment of an administrative ex-

---

1. *Compare, e.g., In re Joseph C. Spiess Co.,* 145 B.R. 597, 601 (Bankr.N.D.Ill.1992) (plain language of statute "treats court approval not as a condition precedent to an effective assumption or rejection, but rather as a safeguard subjecting the decision of the trustee ... to review and possible reversal") *with In re Worths Stores Corp.,* 130 B.R. 531, 533–34 (Bankr.E.D.Mo.1991) (plain language "clearly requires a debtor to obtain prior court approval of its lease rejection"); *In re Revco D.S., Inc.,* 109 B.R. 264, 268 (Bankr.N.D.Ohio 1989) ("unequivocal language" of section 365[a] establishes that rejection occurs only upon court approval) *and In re National Oil Co.,* 80 B.R. 525, 526 (Bankr.D.Colo.1987) ("plain, unequivocal language" indicates court approval required for rejection).

pense support a finding that rejection of an unexpired nonresidential lease should be the date the court approves same.").

The statute thus grants the trustee or a debtor-in-possession the power to reject or assume an unexpired lease and at the same time provides a mandatory mechanism through which the Bankruptcy Court may scrutinize the propriety of such action. *See Spiess,* 145 B.R. at 601 (court approval a "safeguard" against improper or improvident conduct by the trustee); *In re 1 Potato 2, Inc.,* 58 B.R. 752, 755 (Bankr.D.Minn.1986) (court approval not a condition precedent to effective rejection, but rather procedure where decision of debtor-in-possession, and its business judgment, are subject to review and possible reversal). In a sense, the rejection or assumption is valid but voidable as of the date upon which the debtor-in-possession or trustee unequivocally demonstrates an intent to reject or assume. Here, both parties agree that Thinking Machines indicated such intent by the filing of the motion.

The filing of such a motion, however, is not the sine qua non of a valid rejection or assumption:

[T]he trustee assumes or rejects the lease within the meaning of section 365(d)(4) when he makes up his mind to do so and communicates his decision in an appropriate manner, *such as* by filing a motion to assume. The assumption may become effective only after the court approves it. It is, in effect, *subject to defeasance by the court.* But the trustee's act of assuming the lease is complete for the purposes of section 365(d)(4) before the trustee ever obtains court approval.

*By–Rite,* 55 B.R. at 742–43 (emphasis supplied) (footnote omitted); *Casual Male,* 120 B.R. at 261 (quoting *By–Rite* ); *see also In re Re–Trac Corp.,* 59 B.R. 251, 254–55 (Bankr.D.Minn.1986) (test is whether the trustee has indicated assumption or rejection by unequivocal act); *1 Potato 2,* 58 B.R. at 754–55 (rejection effective upon unequivocal communication of intent to reject); *In re Bon Ton Restaurant and Pastry Shop,* 52 B.R. 850, 854 (Bankr.N.D.Ill.1985) (filing of motion to assume lease manifested debtor's unconditional and unambiguous decision to assume).

The Court acknowledges, yet rejects as inconsistent with the language of the statute, cases holding to the contrary. *See, e.g., In re Worths Stores Corp.,* 130 B.R. 531, 533–34 (Bankr.E.D.Mo.1991); *In re Revco D.S., Inc.,* 109 B.R. 264, 267–68 (Bankr.N.D.Ohio 1989).

■ The Court's decision is supported by sound bankruptcy policy. The rule announced herein, that rejection is effective upon an unequivocal act such as the filing of a motion, provides a date of rejection as definite and ascertainable as the date-of-approval standard adopted below. Once a debtor files a motion, or otherwise rejects, the debtor's interest in the leasehold ends and the landlord may begin the process of locating a new tenant, or of renegotiating rental terms with the debtor. The possibility that the court will refuse to grant its approval will not prevent landlords from reletting the premises as soon after rejection as is commercially practicable. The application of the business judgment rule to requests for approval, and the high degree of deference usually afforded purely economic decisions of trustees, makes court refusal unlikely, or at least sufficiently remote to impose the slight burden of uncertainty upon the lessor. *Cf. In re A.J. Lane & Co.,* 107 B.R. 435, 440–41 (Bankr.D.Mass.1989) (Queenan, J.) (agreeing with weight of Code authority applying business judgment standard to rejection of executory contract under section 365[a], eschewing "balancing of the equities approach" or requirement that debtor show performance of contract would be burdensome); *see also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.,* 756 F.2d 1043, 1046–47 (4th Cir.1985), *cert. denied sub nom. Lubrizol Enters., Inc. v. Canfield,* 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986) (debtor's decision to reject executory contract should "be accorded the deference mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors," and approved unless "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice"); *In re Stable Mews Assocs., Inc.,* 41 B.R. 594, 596–97 (Bankr.S.D.N.Y.1984) (rejection of unexpired lease). Finally, the

lessor's rights are unimpaired if the court does refuse to approve the rejection.

The Court is also persuaded by the policy considerations articulated by the Bankruptcy Court in the Northern District of Illinois in *Spiess*, 145 B.R. at 603, and argued here by Thinking Machines. Administrative expenses, such as rent, are paid as a first priority, "off the top," as the actual and necessary costs of preserving the estate. Allowing the lessor to continue to collect at the lease-rate after the debtor has ceased fully to occupy or use the premises would elevate the lessor to a status above, and at the expense of, other unsecured creditors. Such preference would violate the cardinal principle that a debtor's resources should be equally distributed among creditors absent explicit statutory pronouncement. *See id.* The Court declines to read such a preference into the Code.[2]

### III. Conclusion

For the reasons set forth above, Thinking Machine's rejection of its lease with Mellon was effective, subject to court approval, no later than September 13, 1994, the date upon which it filed its motion for approval with the Bankruptcy Court. Therefore, Mellon is entitled to collect rent under the lease as an administrative expense from the date of filing of the bankruptcy petition, August 17, 1994, until September 13, 1994. The Decision of the Bankruptcy Court is hereby reversed, the Judgment vacated, and the case remanded for proceedings consistent with this opinion.

---

2. The Court thus also rejects the conclusion of a recent commentator that the addition in 1984 of subsections (3) and (4) to section 365(d), see *supra* at 367, constitutes or evinces such a preference. *See* Gregory G. Hesse, *A Return to Confusion and Uncertainty As to The Effective Date of Rejection of Commercial Leases in Bankruptcy: A Critical Analysis of* Revco AND Joseph C. Spiess Company, 9 BANKR.DEV.J. 521, 525–27, 538 (1993) (purpose of amendment was "to protect lessors at the expense of the debtor ... [and] to minimize the economic loss suffered by lessors as a result of a tenant's bankruptcy."). The interpretation of the statute adopted here fulfills such a purpose while remaining true to the language chosen by the Congress to effectuate its goal. The legislation sought to lessen, not "minimize," the cost borne by lessors. Even where rejection is effected by trustee action, lessors remain significantly advantaged compared to their status under the prior regime. Before 1984, debtors-in-possession could assume or reject an unexpired lease at any time and were not even obligated to make payments under the lease pending the decision to assume or reject. *See id.* at 525. Since the amendment, lessors are guaranteed a decision on rejection or assumption within 60 days, and are entitled to collect the lease-rate until the decision is made. 11 U.S.C.A. §§ 365(d)(3), (4) (West 1993). The lessors' interests are thus protected, as Congress sought, and there is no justification for providing further protection—by guaranteeing full rental income during the pendency of the debtor's motion for approval—at the expense of other creditors.